Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before Deputy Commissioner as
 STIPULATIONS
1. On or about March 20, 1998, defendant-employer employed more than three (3) employees, and was bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. On or about March 20, 1998, an employee/employer relationship existed between plaintiff and defendant-employer.
3. On or about March 20, 198, employer was self-insured with Constitution State Service Company as its servicing agent.
4. On or about March 20, 1998, plaintiff's average weekly wage was $736.80 which yields a compensation rate of $491.20.
5. On or about March 20, 1998, plaintiff suffered from asthma, with symptoms including coughing, wheezing, shortness of breath and fatigue.
6. Plaintiff returned to work for defendant-employer after the symptoms began.
7. Plaintiff has not been paid temporary total, temporary partial, permanent total or permanent partial disability benefits as a result of his disease of March 20, 1998.
8. As of the date of hearing before the Deputy Commissioner, plaintiff had qualified under the long-term disability plan through CIGNA and would receive benefits at the rate of sixty-percent of his wages.
In addition, the parties stipulated into evidence the following:
1. An indexed packet of stipulated documents, containing medical records and reports and Industrial Commission forms.
2. Report by Maria Holmes of the Occupational Safety and Health Administration with the additional stipulation that the investigation by Ms. Holmes found that there was adequate ventilation in Block C Department of Consolidated Diesel Company and any statement to the contrary in her report was a typographical error by the individual who typed the report.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff, who was thirty-one years old at the hearing before the Deputy Commissioner, and who completed the tenth grade, began working for defendant-employer in 1996 as a temporary employee. On June 16, 1997 he was hired by defendant-employer to work in "C-Block" as a machine technician working at a drill milling machine. Defendant-employer manufactured diesel engines. Plaintiff's job involved changing tools on the drill milling machine and monitoring the machine as it made engine parts. The machine used a dry process to grind metal parts, although there were two misters on the machine which apparently used hydraulic fluid.
2. On March 27, 1998 plaintiff reported to the plant nurse with complaints of nasal congestion, and was given some medication. Plaintiff returned later that day with continued congestion as well as a headache and sore throat. The nurse noted that plaintiff had audible wheezing, so she advised plaintiff to see a doctor. Consequently, plaintiff made arrangements to see Dr. Alfred Covington, an allergist, that day. When plaintiff saw Dr. Covington, plaintiff indicated that he suffered from asthma since he was seven years old, that he had been to the emergency room numerous times for asthma attacks but that it had been two years since his last emergency room treatment. Plaintiff also advised Dr. Covington that he experienced daily asthma symptoms for the past three weeks. On examination, there was moderate wheezing throughout plaintiff's lung fields, which was a very significant finding. Dr. Covington diagnosed plaintiff with severe, uncontrolled asthma, prescribed medication including steroids, inhalers and an antihistamine, and instructed plaintiff to have nebulizer treatments with a breathing machine.
3. Several days later, plaintiff's wife advised the doctor that plaintiff's condition had not improved despite the treatment, so Dr. Covington made arrangements to have plaintiff admitted to the hospital. Plaintiff underwent aggressive treatment for asthma in the hospital. He improved sufficiently and was discharged on April 3, 1998. Dr. Covington continued to treat plaintiff on an outpatient basis as his condition waxed and waned. At Dr. Covington's instructions, plaintiff's wife stopped smoking in the house and at some point the pet bird was removed. However, plaintiff's peak flow measurements remained abnormal. Pulmonary function testing also indicated that there was a restrictive component to his pulmonary condition. In May plaintiff went to the emergency room for increased symptoms. Dr. Covington then decided to refer plaintiff to a pulmonologist in view of the unusual spirometry findings and the persistent severe symptoms. Consequently, on May 19, 1998, plaintiff was evaluated by Dr. Donald Rabil.
4. Plaintiff advised Dr. Rabil that he experienced mild to moderate asthma with three to four emergency room visits during the previous year but that his symptoms had been worse for two to two and one-half months. Plaintiff also indicated that he was diagnosed with a heart valve problem as a teenager. Since Dr. Rabil found some tachycardia on examination, he was concerned that there might be some cardiac dysfunction contributing to the dyspnea. Consequently, Dr. Rabil referred plaintiff to Dr. Sudhir Prasada for a full cardiac work-up. Although plaintiff had a markedly abnormal Thallium stress test in June 1998, a subsequent cardiac catheterization revealed normal arteries, although plaintiff apparently had evidence of some mitral valve prolapse. In view of the findings, plaintiff was released to return to work from a cardiac standpoint.
5. On July 1, 1998 plaintiff returned to Dr. Covington after attempting to return to work earlier that week but experiencing significant shortness of breath with nausea and vomiting. Plaintiff continued to have shortness of breath, wheezing and fatigue on a daily basis. Dr. Covington then recommended that plaintiff see Dr. Peter Kussin, a pulmonologist at Duke University Medical Center. Dr. Kussin examined plaintiff on July 10, 1998 and was of the impression that he had reactive airways disease (asthma) with signs of anxiety and depression. It appeared that plaintiff's symptoms were triggered by exposures to dust and smells at work, even though the levels were low, and by problems with gastro-esophageal reflux. In view of the findings of restrictive impairment on pulmonary function testing, Dr. Kussin ordered a CT scan and a cardiopulmonary exercise test. The scan of plaintiff's lungs was normal and the exercise test was consistent with rather impressive deconditioning. There was no evidence of severe cardiopulmonary disease, however.
6. Dr. Kussin then allowed plaintiff to return to work but gave him restrictions of sedentary activity in an environment which was free of dust and fumes. Defendant-employer did not have work available for him within those restrictions.
7. When plaintiff returned to Dr. Kussin in November 1998, he had symptoms of vocal cord dysfunction, a condition often associated with asthma which also obstructs the airway. Dr. Kussin ordered a specific form of speech therapy, but it took months before plaintiff was able to receive that therapy. By his July 13, 1999 office visit, plaintiff was receiving the therapy, but with no significant impact on the vocal cord condition. As of that evaluation, plaintiff remained symptomatic with his reactive airways disease and was significantly impaired. However, Dr. Kussin continued to indicate that he could return to work within the work restrictions previously stated.
8. Plaintiff alleges that he experienced no problems with asthma for approximately five years prior to March 27, 1998 and that he developed symptoms at work. However, the greater weight of the evidence showed that plaintiff had problems with asthma since he was a child; he was hospitalized for asthma within two years prior to the date he left work; he had experienced symptoms of shortness of breath and wheezing for approximately three weeks prior to March 27, 1998; and he did not note any difference in his symptoms whether at work or at home during that three-week period.
9. Plaintiff was not exposed to hazardous levels of potentially harmful substances at work. Although a chemical known to induce asthma was used in the wet-process machines on C-Block, plaintiff did not operate those machines. Plaintiff operated a dry process machine.
10. Asthmatics are recognized as being sensitive to dust, fumes and odors in any setting which can trigger symptoms. The dust and odors plaintiff encountered at work did trigger symptoms of shortness of breath and wheezing from his asthmatic condition. Apparently, his acid reflux condition also triggered such symptoms.
11. Plaintiff was not placed at an increased risk of developing asthma as a result of his exposure to dust and fumes at work. Rather, as an asthmatic, he had a personal sensitivity which caused him to react to dust and fumes generally, even though they were not otherwise hazardous. Asthma, or reactive airways disease, was not characteristic of his employment as a machine technician on the drill milling machine.
12. Plaintiff has not proven that his exposure to low levels of dust and fumes at work was a significant contributing factor in the development of his asthma.
13. Plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff's asthma was not an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. G.S. § 97-53 (13);Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his asthma. G.S. § 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of August 2001.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER
LKM/mhb